IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

TINENE BEAVER,
on behalf of SRB,

        Plaintiff,

Vs.                                      No. 09-4087-SAC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq* filed by Tinene Beaver on behalf of the plaintiff, her minor child. With the administrative record (Dk. 11) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 19 and 24), the case is ripe for review and decision. For the reasons explained below, the court affirms finding substantial evidence in the record to support the Commissioner's denial of benefits.

**PROCEDURAL HISTORY**

The plaintiff's mother filed an application for SSI benefits on the behalf of her ten-year-old son asserting a disability since birth. The application was denied initially and on reconsideration. At the requested hearing before the administrative law judge ("ALJ"), the plaintiff was represented by counsel, and testimony was taken from the plaintiff's mother. The ALJ found that the plaintiff had "no medically determinable physical or mental impairment, or combination of impairments, which result in two marked or one extreme functional limitation" as to meet or equal a listed impairment. (Rec. 22). Thus, the ALJ concluded that the claimant was not under a disability from the filing of the application on December 14, 2005, through the date of the decision of June 27, 2008. (Rec. 22). The Appeals Council denied the claimant's request for review, so the ALJ's decision is the Commissioner's final decision. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court's review also entails deciding "whether the correct legal

standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Id*. (internal quotation marks and citation omitted).

   The court's duty to assess whether substantial evidence exists:

> "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'"

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court typically defers to

3

the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992). Nonetheless, "findings as to credibility should be closely and affirmatively linked to substantial evidence." *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) (internal quotation marks and citation omitted). The Tenth Circuit has said that "[t]he record must demonstrate that the ALJ considered all of the evidence," and the ALJ must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). The ALJ, however, is not required to discuss every piece of evidence. *Id*.

**ANALYSIS**

The Act regards an individual under 18 years of age to be disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The Commissioner evaluates such disability claims following a three-step process: (1) is the child engaged in

substantial gainful activity, (2) does the child have an impairment or combination of impairments that is severe, and (3) does the child's impairment meet, medically equal or functionally equal the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 416.924(a); *see Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).

The ALJ found that the claimant had never engaged in substantial gainful activity and that he suffered from one "severe" impairment, asthma. At the third step, the ALJ first found that the claimant had "no impairment that meets or medically equals the requirements of any impairment listed in Parts A or B of the Listing of Impairments . . . ." (Rec. 22). As to functional equivalence, the ALJ concluded the claimant did not have a "medically determinable physical or mental impairment, or combination of impairments, which result in two marked or one extreme functional limitation." (Rec. 22). Thus, the ALJ found the claimant was not disabled.

The plaintiff argues the ALJ erred at stage two in not identifying his learning disability as a severe impairment and at stage three in not finding marked limitations on more than one domain. Specifically, the plaintiff disagrees with no marked limitations in the first domain of acquiring

5

and using information and in the second domain of attending and completing tasks. The plaintiff contends the evidence shows the plaintiff to have marked limitations in three domains and not a marked limitation in just one domain.

The court summarily rejects the plaintiff's first challenge on the ALJ's failure to include his learning disability as a severe impairment at stage two. The law is well established on this issue:

> "We can easily dispose of" an argument that the ALJ should have found additional impairments to be severe because "[t]he ALJ ... made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard." *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923; *see also id.* §§ 404.1525(e), 416.945(e); *Maziarz v. Sec' y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

*Brescia v. Astrue*, 287 Fed. Appx. 626, 629, 2008 WL 2662593 at *2 (10th Cir. 2008). Any error at this stage becomes harmless when the ALJ makes the findings necessary to move to the next stage. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

If the severe impairment or combination of impairments does

not meet or medically equal a listing, the ALJ undertakes deciding "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). For the limitations to be "functionally equal," the impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* Of the six domains evaluated, the plaintiff only addresses the ALJ's findings as to two of them: acquiring and using information, and attending and completing tasks. 20 C.F.R. 926a(b)(1). The principal issue on this appeal is whether the evidence shows the plaintiff to have "marked" limitations in these two domains. The Commissioner's regulations define "marked" in this way:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(I).

The ALJ decision summarizes the testimony from the claimant's mother about the child's frequent daily activities with family, his performance at school, his general behavior, and his learning disability.

After some general findings, the ALJ addressed each of the six domains.

On the domain of acquiring and using information, the ALJ found "less than marked limitation," based on the following points:

> Claimant has no hearing, speaking, or vision impairment but does have trouble breathing due to asthma that is not of listing level severity. Claimant misses some school, but not a significant amount as is noted in his school records, and has never been held back. His second grade teacher reported he generally had only a slight problem in this domain.
> Further, he is in regular classes, including physical education, but has a special education teacher for reading, English, and spelling. Based on WISC-IV testing on November 29, 2007, he obtained a Full Scale IQ of 90, his perceptual reasoning and working memory were in the average range, and his overall ability was in the average range. Thus, his limitations are not markedly limiting.
> The undersigned has considered the opinion of claimant's special education teacher who indicated claimant has an "extreme" limitation in this domain but as noted above, it only considers claimant's functioning in one particular area and not the entire domain which the undersigned must consider.

(Rec. 20) (exhibit citations omitted). On the domain of attending and completing tasks, the ALJ similarly found "less than marked limitation," based on the following:

> His 2nd grade teacher reported it took claimant twice as long to complete tasks as it did the other children and that he was easily distracted. However, he has not been held back in school, has been able to complete tasks in his regular classes, and was only recently diagnosed with a learning disability, possibly secondary to the asthma medication he takes. When observed in the general education classroom in November 2007, he was able to follow along most of the time, took a test when asked, raised his hand to ask for

8

help, and returned to his seat.
   The undersigned finds these observations show he does not have a marked limitation in this domain. Claimant also enjoys playing video games and going to movies which shows he can attend to tasks he enjoys. Claimant definitely has difficulties remaining focused, particularly in his special education classes, but is not markedly limited in his overall ability to function in this domain. Again, the undersigned has considered the opinion of claimant's special education teacher but must consider the evidence as a whole.

(Rec. 20-21) (exhibit citations omitted).

The plaintiff concedes that the ALJ's decision offers an explicit rationale for her conclusions on these two domains but contends the rationale "is not supported by a more careful review of the record." (Dk. 19, p. 32). The court will address the plaintiff's contentions for each domain finding.

*Acquiring and Using Information*

The relevant considerations are "how well . . . [the claimant] acquire[s] or learn[s] information, and how well . . . [the claimant] use[s] the information . . . learned." 20 C.F.R. § 416.926a(g). Beginning at birth, learning starts with experiences gained through the senses and continues with concepts and symbols that enable learning "to read, write, do arithmetic, and understand and use new information." 20 C.F.R. § 416.926a(g)(1)(i). Thinking is applying the learned information and seeing

relationships that inform reasoned and logical choices. 416.926a(g)(1)(ii). "You must also be able to use language to think about the world and to understand others and express yourself; *e.g.*, to follow directions, ask for information, or explain something." *Id*. The Commissioner's regulation offers age-group descriptions, including this one applicable to the school-age claimant:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (*e.g.* reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(iv).

In the plaintiff's judgment, the ALJ's statement that the plaintiff did not miss a "significant" amount of school is subjective, and the evidence of record suggests a "more significant problem with interruption at school." (Dk. 19 p. 33). What the plaintiff cites from the record does not show the plaintiff to have averaged more than 2 to 3 absences per academic quarter.

10

The court finds nothing unreasonable in the ALJ's assessment that this number and rate of absences do not reach the level of "significant." The record simply does not suggest the claimant has a greater problem with absences than that characterized by the ALJ.

The plaintiff points out that while he has never been "held back" in school, he is not learning at his grade level. The plaintiff highlights the academic evidence of his learning disability. He receives special education services for core subjects.[1] His teachers consider him to be performing at a grade-lower than his current placement. Scores from testing done in November and December of 2007 showed him in the 4th and 6th percentiles for passage comprehension and the 6th percentile for broad reading. (Rec. 125, 126). With respect to his math performance, the plaintiff's performance was average on the testing except that he was unable to complete any division. (Rec. 127). While this other evidence offers an additional perspective, it still remains a relevant factor that the teachers and administrators concluded the claimant's achievement was sufficient for promotion to the next grade. The record also shows that the

---

[1] The record shows that in second grade the claimant received special education services for reading and written language for 30 minutes every school day. (Rec. 67). The record indicates the fourth grade teachers may have increased the frequency of these services. (Rec. 168).

11

plaintiff's regular classroom teachers expected improvement in reading and English from spending more supplemental time with the special education instructor, and they reported the same. (Rec. 168). Such instruction addressed the plaintiff's need for small group instruction to develop skills for decoding words and improving fluency and comprehension. (Rec. 127).

The plaintiff takes issue with the ALJ's statement that the plaintiff's second-grade teacher reported "only a slight problem in this domain." (Rec. 20). In their questionnaire from January of 2006, the teachers checked a slight problem in eight of ten subcategories, an obvious problem in one category, and a serious problem in the category of reading and comprehending written material. In their questionnaire from April of 2006, the teachers checked the same boxes except for reducing from serious to obvious the claimant's problem with reading and comprehension. The court appreciates that the ALJ in reaching the conclusion that the teachers' evaluations reported "only a slight problem in this domain" weighed the eight subcategories against the two. The court is not persuaded the ALJ's conclusion is necessarily erroneous, particularly since the two boxes in the April evaluation involved only the next higher rating of an obvious problem. Moreover, this same evidence still supports the ALJ's

12

conclusion that the plaintiff does not have serious problem in this domain.

The plaintiff next questions the ALJ's reliance on the WISC-IV testing scores and the ALJ's failure to rely on other standardized testing scores that evidence a learning disability with reading. The plaintiff comes forward with no convincing arguments or proof that WISC-IV scores would not be a reliable measure of the plaintiff's ability to acquire and use information. Not only was the plaintiff's full IQ score within the average range but so was his perceptual reasoning index and working memory index. His scores for verbal comprehension and processing speed were in the upper half of the low average range. The school teachers and professionals, as a team, also relied on these same results to summarize the plaintiff's "cognitive abilities":

> . . . [The plaintiff's] overall ability is in the average range, according to his performance on the WISC-IV on 11/29/07. His perceptual reasoning and working memory were also in the average range. HIs processing speed and verbal comprehension were in the low average range.

(Rec. 126). They looked to the plaintiff's scores on more specialized testing of language art skills to identify the plaintiff's strength and weaknesses and to establish the plaintiff's needs for additional instruction on certain skills.

13

The plaintiff's special education teacher opined that the plaintiff has an extreme limitation in this domain. The teacher's only written explanation for this opinion was the plaintiff's low scores on recent reading achievement tests. The ALJ appropriately evaluated the teacher's opinion on the plaintiff's functioning in this domain as having been based only on the plaintiff's particular learning disability with reading as evidenced in the classroom. The ALJ's evaluation of this opinion in this way is certainly reasonable, and the plaintiff has not shown otherwise.

The ALJ properly considered the plaintiff's learning disability as a limitation under this domain, but concluded that the plaintiff's domain functioning was not markedly limited as a result of this learning disability. The ALJ's finding is sustained by substantial evidence.

*Attending and Completing Tasks*

The relevant considerations are "how well . . . [the claimant is] able to focus and maintain . . . attention, and . . . [to] begin, carry through, and finish . . . activities." 20 C.F.R. § 416.926a(h). Attention includes the ability to adjust "levels of alertness," to initiate and maintain concentration, "to filter out distractions," and "to return to the task without other people having to remind you frequently to finish it." 20 C.F.R. § 416.926a(h)(1)(i).

14

The Commissioner's regulation applies these general domain considerations to school-age children in the following way:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines, without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (*e.g.* be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(1)(iv).

The ALJ reasonably found that the plaintiff did not have a marked limitation in this domain. The ALJ noted the teacher's comments that the plaintiff needed more time to complete tasks and was easily distracted in the classroom. The ALJ considered those comments along with that the plaintiff had not been held back in school, had completed tasks in regular classes, had been observed showing proper attention during a testing session, and had been diagnosed just recently "with a learning disability, possibly secondary to the asthma medication he takes." (Rec. 20). The ALJ also looked to evidence of the plaintiff's ability to focus

15

and concentrate on matters outside of the school setting. "Claimant also enjoys playing video games and going to movies which shows he can attend to tasks he enjoys." (Rec. 21). The ALJ referenced the opinion of the plaintiff's special education teacher but concluded that "[c]laimant definitely has difficulties remaining focused particularly in his special education classes, but is not markedly limited in his overall ability to function in this domain." (Rec. 21).

The plaintiff's arguments here essentially ask for the evidence to be reweighed and a different result to be reached. Shouldn't it be a marked limitation if it takes the plaintiff twice as long to complete classroom tasks and if he is easily distracted in the classroom. Just because the plaintiff completes some tasks in the regular classroom, this doesn't mean the tasks are done consistently, timely and without distraction. The school official who observed the plaintiff's behavior during a particular testing period equivocated in her description. The plaintiff's mother had observed the plaintiff lose interest with games sometimes and want to do something else. The plaintiff's special education teacher opined that the plaintiff had a marked limitation and commented about his apparent "attention span problems" and need "to have reminders to get on task." (Rec. 206).

16

The plaintiff's problems at school are a relevant part of the evidence as to the plaintiff's ability to function in this domain. The ALJ certainly is entitled to consider whether the plaintiff's concentration issues at school may be influenced by his attitude toward the classroom and school work. In noting the plaintiff's ability to play video games and attend movies, the ALJ assessed that the plaintiff's ability to focus was not as compromised when engaging in "tasks he enjoys." (Rec. 21). Substantial evidence supports this finding. The plaintiff's mother testified that he played video games, that the plaintiff is better at playing games than other things, that while playing he may sometimes lose interest, but that she could not say the plaintiff had trouble concentrating on video games. The plaintiff's fourth grade teacher wrote for the third quarter that "definite improvements in attitude" had been seen. (Rec. 168). The teacher also observed improvement in listening carefully and scored the plaintiff as satisfactory in practicing self-discipline, in following directions and in using time wisely. (Rec. 171). The court cannot say that the ALJ did not fairly consider all the relevant evidence in this domain.

In sum, the court is not persuaded by the merits of the plaintiff's arguments. The ALJ's finding that the plaintiff did not have two "marked" or

17

one "extreme" functional impairment is supported by substantial evidence, that is, evidence which reasonable minds might accept as adequate to support the conclusions. It is not this court's right to reweigh the evidence or substitute its judgment. Consequently, the decision of the Commissioner is affirmed.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 22nd day of July, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge